**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| IN RE: | Bankruptcy No. 24-21982-JCM |
|---|---|
| MeSEARCH MEDIA TECHNOLOGIES LIMITED, | Chapter 11 |
| Debtor. | |

**CHAPTER 11 PLAN OF REORGANIZATION OF MeSEARCH MEDIA TECHNOLOGIES LIMITED FILED BY PLAN PROPONENT GAME CREEK HOLDINGS, LLC DATED NOVEMBER 21, 2024**

Kirk B. Burkley, Esquire
PA ID 89511
kburkley@bernsteinlaw.com
Mason S. Shelton, Esquire
PA ID 332792
mshelton@bernsteinlaw.com
BERNSTEIN-BURKLEY, P.C.
601 Grant Street
9th Floor
Pittsburgh, PA 15219
Phone No: (412) 456-8108
Fax No: (412) 456-8135
*Counsel for RMS Funding*
*Company, LLC and Game*
*Creek Holdings, LLC*

{C1069696.1 }

## **TABLE OF CONTENTS**

ARTICLE I: Definitions ……………………………………………………………..…….. 3

ARTICLE II: Interpretation; Application of Definitions; Rules of Construction; and Computation of Time……………………………………………………………..…………....………. 7

ARTICLE III: Administrative Expense Claim …………………………….…………………... 7

ARTICLE IV: Classification of Claims and Interests…………………………….…...................……8

ARTICLE V: Treatment of Allowed Claims Under the Plan………………………………..……..…..9

ARTICLE VI: Treatment of Executory Contracts and Unexpired Leases……………………..……10

ARTICLE VII: Acceptance or Rejection of the Plan………………………………………..…..10

ARTICLE VIII: Means of Implementation of the Plan………………………………………..…..11

ARTICLE IX: Distributions Under the Plan………………………………..…………..…..13

ARTICLE X: Disputed Claims…………………………………………………………..…..14

ARTICLE XI: Abandonment of Property…………………………………………………..…..15

ARTICLE XII: Conditions Precedent to Effective Date……………………………..………..…..16

ARTICLE XIII: Effects of Confirmation ……………………………………………..……..16

ARTICLE XIV: Injunctions and Indemnification..........................................................................................18

ARTICLE XV: Retention of Jurisdiction …………………………………………………..…..19

**CHAPTER 11 PLAN OF REORGANIZATION OF MeSEARCH MEDIA TECHNOLOGIES
LIMITED AND GAME CREEK HOLDINGS, LLC, DATED NOVEMBER __, 2024**

Game Creek Holdings, LLC ("Game Creek"), on behalf of MeSearch Media Technologies
Limited (the "Debtor" or "MeSearch"), hereby proposes this Chapter 11 Plan of Reorganization dated
November 21, 2024.

**ARTICLE I
DEFINITIONS**

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the
meanings set forth below:

**1.0     Definitions**

**1.1     "Administrative Bar Date"** means the last date on which a request for payment of an
Administrative Expense Claim may be filed, as set forth in Section 3.3 of the Plan.

**1.2     "Administrative Expense Claim"** means a claim for any cost or expense of administration
of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to
priority under 507(a)(l) of the Bankruptcy Code, including, without limitation, (a) fees payable under 28
U.S.C. § 1930, (b) any actual and necessary costs and expenses of preserving the Debtor's estate, (c) any
actual and necessary costs and expenses incurred operating the Debtor's business in the ordinary course, and
(d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order
under section 330 or 503 of the Bankruptcy Code.

**1.3     "Allowed"** means, with respect to a Claim, (a) any Claim that has been listed by a Debtor
in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of
claim or interest has been filed, (b) any properly and timely filed, liquidated, noncontingent Claim with
respect to which no objection to the allowance thereof has been filed within the applicable period fixed by
the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (c) any
Claim allowed pursuant to the Plan, the Confirmation Order or a Final Order of the Bankruptcy Court.
Unless otherwise specified in the Plan or in a Final Order allowing such Claim, "Allowed" in reference to a
Claim shall not include (i) interest on the amount of such Claim accruing from and after the Petition Date,
(ii) punitive or exemplary damages, or (iii) any fine, penalty or forfeiture.

**1.4     "Allowed Amount"** means the sum at which a Claim is Allowed.

**1.5     "Assets"** means all the assets of the Estate, whether or not reflected in the financial records
of the Debtor.

**1.6     "Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. § *101 et seq*., as
amended and in effect as of the Petition Date.

**1.7     "Bankruptcy Court"** means the United States Bankruptcy Court for the Western District
of Pennsylvania.

**1.8     "Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as
promulgated by the United States Supreme Court under 8 U.S.C. § 2075, and (b) the local rules of the
Bankruptcy Court, in each case, as in effect on the Petition Date.

**1.9**    **"Beneficiary"** or **"Beneficiaries"** means any holder of an Allowed Claim who is offered the Escrow Option pursuant to the Plan and, in fact, elects the Escrow Option.

**1.10**    **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) any other day on which the Bankruptcy Court is required or authorized to close.

**1.11**    **"Cash"** means legal tender of the United States of America.

**1.12**    **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

**1.13**    **"Chapter 11 Case"** means the Debtor's bankruptcy case filed involuntarily with the Bankruptcy Court under chapter 11 of the Bankruptcy Code at Bankruptcy Case Number 24-21982-JCM.

**1.14**    **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code.

**1.15**    **"Claim Holder"** or **"Holder"** means any holder of claims in any class, as defined herein, entitled to receive a Distribution under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.16**    **"Class"** means each of the groups of substantially similar Claims classified in Article IV of the Plan and pursuant to section 1129(a)(1) of the Bankruptcy Code.

**1.17**    **"Collateral"** means any property or interest in property of the Debtor's Estate that is subject to a valid lien to secure the payment or performance of a Claim, which lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.18**    **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.19**    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.20**    **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.21**    **"Court Order"** means any order entered in the Chapter 11 Case by the Bankruptcy Court.

**1.22**    **"Debtor"** means MeSearch Media Technologies Limited, a Pennsylvania corporation.

**1.23**    **"Disallowed"** means a Claim that has been disallowed by Final Order when used with respect to a Claim.

**1.24**    **"Disclosure Statement"** means the Disclosure Statement to the Plan, including the exhibits, appendices and schedules thereto, as the same may be amended, modified or supplemented from time to time and as approved by the Bankruptcy Court pursuant section 1125 of the Bankruptcy Code.

**1.25** **"Disputed"** means, with respect to any Claim, any Claim (i) that the Debtor has scheduled as unliquidated, disputed, or contingent, (ii) to which a party in interest has objected, or (iii) that has not become an Allowed Claim. Wherever in the Plan the word "Disputed" precedes a defined term describing a Claim, that phrase will mean a Disputed Claim of the type described.

**1.26** **"Distribution(s)"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

**1.27** **"Effective Date"** is the date 30 days after the entry of the Confirmation Order, *provided that* all of the conditions precedent set forth in Section 12.2 hereof are satisfied. If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated and provided that all of the conditions precedent set forth in section 12.2 hereof are satisfied.

**1.28** **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.29** **"Equity Interests"** means (a) the issued and outstanding stock of the Debtor, including, but not limited to all common and preferred shares, and (b) any option, warrant or right, contractual or otherwise, to acquire, in connection with or related to, any such interests, including any stock redemption agreements and promissory notes issued in connection therewith.

**1.30** **"Estate"** means the estate of the Debtor created by section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

**1.31** **"Estate Litigation"** means all claims, Causes of Action, and Recovery Actions of the Estate against third-parties including, but not limited to, any claims against creditors, and/or litigation or claims instituted or asserted by the Debtor prior to the Effective Date.

**1.32** **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules.

**1.33** **"Final Order"** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

**1.34** **"Impaired"** shall have the same meaning as set forth in Section 1124 of the Bankruptcy Code.

**1.35** **"Insider"** shall have the same meaning as more fully defined in Section 101(31) of the Bankruptcy Code.

**1.36** **"Loan Facility"** means any funds loaned by RMS Funding Company, LLC to Debtor from the Petition Date through the Effective Date of this Plan as approved by Court Order.

**1.37** **"Petition Date"** means August 13, 2024, the date on which this Chapter 11 Case commenced.

**1.38** **"Plan"** means this Chapter 11 Plan of Reorganization, including all schedules and exhibits hereto or thereto, as the same may be amended, modified or supplemented from time to time in accordance with its terms and applicable provisions of the Bankruptcy Code.

**1.39** **"Plan Proponent"** means Game Creek.

**1.40** **"Priority Non-Tax Claim"** means any Claim that is entitled to priority in accordance with 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.41** **"Priority Tax Claim(s)"** means any Claim that is entitled to priority in accordance with Section 507(a)(8) of the Bankruptcy Code.

**1.42** **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.43** **"Proof of Claim"** means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

**1.44** **"Recovery Actions"** means, collectively and individually, without limitation, preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law.

**1.45** **"Reorganized Debtor"** means the Debtor as reorganized after Confirmation of the Plan and the Effective Date.

**1.46** **"Schedules"** means the schedules, statement of financial affairs, and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.47** **"Secured Claim(s)"** means a Claim secured by Collateral.

**1.48** **"Secured Creditor(s)"** means a creditor holding a Secured Claim.

**1.49** **"Trustee"** means Crystal H. Thornton-Illar, the Chapter 11 Trustee of the Debtor in her capacity as appointed in the Chapter 11 Case under Sections 1104, 1106, and 1108 of the Bankruptcy Code and Rule 2007.1 of the Federal Rules of Bankruptcy Procedure.

**1.50** **"Unimpaired"** means a Claim that is not Impaired.

**1.51** **"United States Trustee"** means the United States Trustee appointed under 28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.52** **"Unsecured Claim"** means any Claim that is neither a Secured Claim, Priority Claim, Priority Tax Claim, Administrative Claim or a Claim included within any other class.

**ARTICLE II**
**INTERPRETATION; APPLICATION OF DEFINITIONS;**
**RULES OF CONSTRUCTION; AND COMPUTATION OF TIME**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.  A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**ARTICLE III**
**ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**3.1**    **Administrative Expense Claims**

**3.1.1**    **General**

Each Allowed Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be paid by the Estate in Cash, in full, by the later of (i) the Effective Date, (ii) five (5) Business Days after the date such Claim becomes an Allowed Claim, or (iii) in the ordinary course of business as and when such Administrative Expense Claim becomes due.  Notwithstanding the foregoing, the holder of an Administrative Expense Claim may receive such other less favorable treatment as may be agreed upon by the holder and the Debtor.

### 3.1.2 Judicial Fees

All fees comparable to the fees payable pursuant to 28 U.S.C. § 1930, if and to the extent due, shall be paid in Cash in the full amount of such Claim when due.  The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 Case, or enters an order either converting this case to a case under Chapter 7 of the Bankruptcy Code or dismissing this case.  The Trustee shall file with the Bankruptcy Court, and shall transmit to the United States Trustee, a true and correct statement of disbursements made by the Debtor for each month that this Chapter 11 Case remains open, in a format prescribed by the United States Trustee.

## 3.2    Professional Compensation

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, counsel to the Debtor, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Bankruptcy Court, an application for final allowance of such Claim no later than forty-five (45) days after the Confirmation Date.  Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Debtor, counsel to the Debtor, and the requesting Entity by the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the Filing of the relevant application.

## 3.3    Administrative Bar Date

Any request for the payment of an Administrative Expense Claim (other than (i) the Administrative Expense Claims of Professionals, which are addressed in Section 3.2, and (ii) 503(b)(9) Claims) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of the Estate, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Debtor within fifteen (15) days after the Confirmation Date.  Notwithstanding the above, in accordance with 11 USC § 503(b)(2)(D), this Plan section shall not be applicable to taxes, penalties and interest, if any, incurred by the Estate.

## 3.4    Priority Tax Claims

Each Holder of a Priority Tax Claim shall be paid one hundred percent (100%) of its Allowed Priority Tax Claim in a signal Distribution on the Effective Date.

**ARTICLE IV**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

## 4.1    Classified Claims

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of the Class and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|------------|--------|
| Class 1 | Secured Claims | Unimpaired – Not entitled to vote |
| Class 2 | Priority Non-Tax Claims | Unimpaired – Not entitled to vote |
| Class 3 | General Unsecured Creditors | Impaired – Entitled to vote |
| Class 4 | Equity Interests | Impaired – Entitled to vote |
| Class 5 | Creditors Holding Convertible Notes | Impaired – Entitled to vote |

The treatment of the above Claims is more fully set forth in Article V.

## 4.2    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified and are therefore excluded from the Classes listed above. Administrative Expense Claims and Priority Tax Claims shall be treated in accordance with Article III of the Plan.

## 4.3    Bar Date for Claims

The Bar Date for general prepetition Claims (including, without limitation, Administrative Expense Claims entitled to priority under sections 503(b)(9), 507(a)(4) or 507(a)(5) of the Bankruptcy Code) is February 19, 2025. The Bar date for government claims is March 26, 2025. As set forth in Article X hereof, the Debtor may review and object to any such Claim within 120 days of the later of: (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; provided, however, that such 120 day period of review may be extended by the Bankruptcy Court upon the request of the Debtor after notice and a hearing.

## ARTICLE V
## TREATMENT OF ALLOWED CLAIMS UNDER THE PLAN

## 5.1    Class 1: Secured Claims

Class 1 shall consist of Secured Claims. Each Holder of a Class 1 Claim shall be paid one hundred percent (100%) of its Allowed Class 1 Claim in a single Distribution on the Effective Date.  The Trustee does not believe there are any secured claims.  To the extent any entity files a claim alleging that they are secured and that claim is allowed, it will be paid in full on the Effective Date.

Class 1 Claims are Unimpaired, are deemed to have accepted the Plan, and are not entitled to vote on the Plan.

## 5.2    Class 2: Priority Non-Tax Claims

Class 2 shall consist of Priority Non-Tax Claims.  Each Holder of a Class 2 Claim shall be paid one hundred percent (100%) of its Allowed Class 2 Claim in a single Distribution on the Effective Date.

Class 2 Claims are Unimpaired, are deemed to have accepted the Plan, and are not entitled to vote on the Plan.

**5.3      Class 3: General Unsecured Creditors**

Class 3 shall consist of all Unsecured Creditors.  Each Holder of a Class 3 Claim shall be paid one hundred percent (100%) of its Allowed Class 3 Claim, without interest, in a single Distribution on the Effective Date.

Class 3 Claims are Impaired, are entitled to vote on the Plan.

**5.4      Class 4: Equity Interests**

Class 4 shall consist of the Membership Interests of the Members of MeSearch (at times the "Existing Equity").  Existing Equity interests shall be cancelled and new equity issued.  Each holder of a Class 4 Allowed Equity Interest shall receive their pro rata share of $100,000 paid on the Effective Date, which shall be subject to higher and better offers at the confirmation hearing.

Class 4 Equity Interests are Impaired, are entitled to vote on the Plan.

**5.5      Class 5: Creditors Holding Convertible Notes**

Class 5 shall consist of the Convertible Debt held by Game Creek.  All Convertible Debt will be assumed, along with any right of conversion, by the Reorganized Debtor.

Class 5 Creditors Holding Convertible Notes are Impaired, are entitled to vote on the Plan.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACT AND UNEXPIRED LEASES

**6.1      Assumption/Rejection of Unexpired Pre- and Post-Petition Leases, Licenses and Executory Contracts**

As of the Effective Date, all pre-petition executory contracts, licenses and unexpired leases to which the Debtor is a party shall be deemed assumed, unless otherwise specifically rejected pursuant to motion Filed by the Debtor prior to the Effective Date and subsequent Court Order.  If any such lease, license, or contract is rejected pursuant to or in accordance with this provision, the counter-party shall file any claim for rejection damages within thirty (30) days after the Court Order rejecting such lease and/or contract is Filed.

**6.2      Rejection Damages**

Claims of any counter party, if any, to any rejected executory contract or lease shall be paid as a Class 3 Claim (*General Unsecured Claims*).

## ARTICLE VII
## ACCEPTANCE OR REJECTION OF THE PLAN

**7.1      Holders of Claims Entitled to Vote**

Except for the Holders of Claims/Equity Interests in Classes 3, 4, and 5, no Holders of Claims or Equity Interests shall be entitled to vote to accept or reject this Plan. The Holders of Claims/Equity Interests in Classes 3, 4, and 5 are Impaired under the Plan and are entitled to vote on the Plan. Since all other Classes

of Creditors and Equity Interests are Unimpaired, pursuant to the 11 U.S.C. § 1126(f), each such Holders are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

**7.2    Non-Consensual Confirmation**

To the extent any Class is deemed to have rejected the Plan, the Plan may be "crammed down" on the claimants within such Class pursuant to Section 1129(b) of the Bankruptcy Code and the filing of this Plan constitutes the Plan Proponent's request that the Plan be crammed down in the event necessary.

## ARTICLE VIII
## MEANS OF IMPLEMENTATION OF PLAN

**8.1    Cancellation of Existing Securities; Issuance of New Equity Interest to Game Creek Holdings, LLC**

**8.1.1    Cancellation of Existing Securities**

On the Effective Date, except as set forth in the Plan, all notes, all certificates evidencing an Equity Interest and any document and instrument which evidences or is related to either of the foregoing shall (i) be deemed cancelled, terminated and of no further force and effect as to the Debtor or the Reorganized Debtor, and (ii) have no effect other than the right to participate in the distributions, if any, provided under the Plan.

**8.1.2    Issuance of New Equity Interest to Game Creek Holdings, LLC**

In exchange for an equity infusion sufficient to make all of the necessary payments due and payable on the Effective Date (the "Equity Infusion"), Game Creek Holdings, LLC shall receive on the Effective Date one hundred percent (100%) of the Equity Interest of the Reorganized Debtor in exchange for a payment of $100,000.00.

**8.2    The Reorganized Debtor's Duty Under the Plan**

**8.2.1    The Reorganized Debtor**

The Trustee shall continue to operate the Debtor as authorized until the Effective Date of the Plan, upon which the Trustee's duties and responsibilities shall cease.

**8.2.2    Funding of the Plan**

Fifteen (15) days after the entry of a Final and Unappealable Confirmation Order, Game Creek shall pay to creditors funds sufficient to fund the payments due on the Effective Date.

**8.2.3    Responsibilities of the Reorganized Debtor**

The Reorganized Debtor will have those responsibilities created by this Plan upon the terms and conditions summarized herein and will, for the benefit of the Claimants, exercise the rights and powers vested in it by this Plan in the same manner, and use the same degree of care and skill in their exercise, as a prudent person would exercise and use under the circumstances in the conduct of its own affairs, notwithstanding section 345 of the Bankruptcy Code, and further agrees to receive and disburse all of the Assets in accordance with the terms hereof.

(a)  The Reorganized Debtor is empowered, in its sole discretion, to:

    i.    perform all of the obligations and agreements of the Plan provided for herein;

    ii.    The Reorganized Debtor shall have sole discretion as to the disposition of any Assets and may do so without obtaining Bankruptcy Court approval, except where Bankruptcy Court approval is required under a specific provision of this Plan. The Debtor shall cause the distribution of the Assets of the Estate in accordance with the terms of this Plan;

    iii.    commence or continue Recovery Actions for the Purpose of liquidating the Assets of the Estate or maximizing the value of the Estate;

    iv.    possess the right to object to any Claims (disputed or otherwise), and to compromise or settle any Claims prior to objection without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and/or to seek Bankruptcy Court approval, on a periodic basis, for any Claims settlements made;

    v.    seek a determination of tax liability under Section 505 of the Bankruptcy Code and to pay taxes, if any, related to the Debtor, Estate or the sale of the Assets of the Debtor or the Estate.

    vi.    compromise or settle disputes with respect to debt obligations owed to the Debtor or the Estate;

    vii.    execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

    viii.    enter into financing agreements to the extent necessary to supplement the cash flow of the Estate so as to allow the Debtor to maximize the liquidation value of the Assets, maximize the amounts collected pursuant to Recovery Actions and minimize amounts paid to settle liabilities, including but not limited to disputes;

    ix.    engage and compensate professionals, including attorneys, accountants, investment advisors, and others, to assist the Debtor in carrying out its duties hereunder which professionals include, without limitation, those retained to assist the Debtor in any litigation related to the liquidation of the Assets as well as the Estate Litigation or the settlement of the Liabilities. All professionals employed by the debtor shall be compensated by the Estate without further Order of the Bankruptcy Court.

    x.    file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Assets of the Estate;

xi.    in its sole discretion, settle, compromise, litigate to a final judgment, or abandon any Cause of Action, Disputed Claim, or Claim Objection, including but not limited to Recovery Actions; and

xii.    reconcile any claims unless such allowance or settlement involves a payment to the Claimant or offset of amounts owing by the Claimant.

## ARTICLE IX
## DISTRIBUTIONS UNDER THE PLAN

### 9.1    Distributions

The Reorganized Debtor shall make all Distributions required under the Plan on account of Allowed Claims.

### 9.2    Delivery of Distributions

### 9.2.1    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Debtor at the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proof(s) of Claim Filed by such Holder. If any Distribution is returned as undeliverable, amounts in respect of any undeliverable Distributions made by the Debtor or Reorganized Debtor shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under section 9.2.2 hereafter. The Reorganized Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan

### 9.2.2    Unclaimed Property

Except with respect to property not Distributed because it is being held on account of a Disputed Claim or is returned undeliverable under Section 9.2.1 above, Distributions that are not cashed by the claimant by the expiration of three (3) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall be distributed back to Game Creek.

### 9.3    Manner of Cash Payments Under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor or by wire transfer from a domestic bank, at the option of the Reorganized Debtor.

### 9.4    Compliance with Tax Requirements

In connection with making Distributions under this Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any

withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated as an undeliverable distribution in accordance with Section 9.2.1 of this Plan.

**9.5     No Payment of Fractional Cents**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

**9.6     Interest on Claims**

Unless otherwise expressly provided for in the Plan, the Confirmation Order, other order of the Bankruptcy Court or as required by applicable law, and unless the full principal amounts of all Allowed General Unsecured Claims have been paid or satisfied, post-petition interest shall not accrue or be paid on any Claims.

**9.7     No Distribution in Excess of Allowed Amount of Claim**

Except for Holders of Allowed Claims that elect the Escrow Option (to the extent such Holders are entitled to do so), notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**9.8     Setoff and Recoupment**

The Debtor may, but shall not be required to, setoff against, or recoup from, any Allowed Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Allowed Claim, but neither the failure to do so nor the Allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Estate of any right of setoff or recoupment that any of them may have against the Holder of any Allowed Claim.

**9.9     Prepayments**

The Debtor shall have the right to prepay, without penalty, any obligations under the Plan.

**ARTICLE X**
**<u>DISPUTED CLAIMS</u>**

**10.1     Objection Deadline**

All objections to Claims shall be Filed and served upon the Holders of each such Claim(s) within 120 days after the later of: (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court, unless a challenge is already pending to that Claim in another jurisdiction or otherwise ordered by the Bankruptcy Court after notice and a hearing.

**10.2    Estimation of claims**

The Debtor may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**10.3    No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

**10.4    Late Filed Claims Disallowed; Not Entitled to Distribution**

Unless the Bankruptcy Court enters an Order Allowing the Claim, any and all Claims filed after the applicable bar date in this case shall not be entitled to a Distribution, the Debtor is not required to take any further action with respect to said claims, this Plan shall constitute an objection to any such claim filed after the applicable bar date, and the Confirmation Order shall serve as an Order sustaining such objection and disallowing the late filed Claims.

**10.5    Reservation of Rights to Object to Claims Scheduled by the Reorganized Debtor**

The Reorganized Debtor expressly reserves the right to object to any Claim Holder whose Claim was on the Debtor's schedules or who filed a proof of claim.

**ARTICLE XI**
**ABANDONMENT OF PROPERTY**

**11.1    Abandonment by the Debtor**

The Debtor and the Reorganized Debtor shall have the right to abandon in any commercially reasonable manner any other property that the Debtor reasonably concludes is of no benefit to the Estate or its creditors or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to distribute.  Such abandonment shall be (a) effected by a separate notice or order of the Bankruptcy Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

**11.2    Abandonment Claims**

If the abandonment of any Asset pursuant to the Plan (including those abandoned pursuant to section 11.1) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate or its properties,

successors, and assigns, unless a Proof of Claim is Filed and served upon counsel for the Debtor on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Bankruptcy Court of an order authorizing abandonment of such Asset.

## ARTICLE XII
## CONDITIONS PRECEDENT TO THE CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

**12.1    Conditions Precedent to the Confirmation of the Plan**

It shall be a condition precedent to the confirmation of the Plan that the Confirmation Order shall have been entered by the Bankruptcy Court.

**12.2    Conditions Precedent to the Effective Date of the Plan**

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied in the Chapter 11 Case:

(a)    The Confirmation Order shall be a Final Order;

(b)    After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification; and

(c)    Game Creek Holdings, LLC shall have made the Equity Infusion as required by Section 8.1.2 of the Plan.

(d)    Equity in the reorganized Debtor shall be distributed to Game Creek Holdings, LLC.

**12.3    Waiver of Conditions Precedent**

None of the conditions precedent in Sections 12.2 may be waived or modified, in whole or in part, by the Debtor.

## ARTICLE XIII
## EFFECTS OF CONFIRMATION

**13.1    Vesting of Assets**

As of the Effective Date, title to any property of the Estate shall vest and/or re-vest in the Reorganized Debtor in accordance with the terms of this Plan.  As of the Effective Date, all assets of the Estate shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

**13.2    Intellectual Property**

As of the Effective Date, the Reorganized Debtor shall be deemed to be a successor under that certain Software License Agreement Dated July 1, 2019 by and between Crivella Holdings Limited and Crivella Media Technologies Limited n/k/a MeSearch.

### 13.3    Release of Assets

The Bankruptcy Court shall retain jurisdiction of the Debtor and Reorganized Debtor, its assets and properties, the Creditors' Royalties Escrow, and the Escrow Assets until the Chapter 11 Case is closed.

### 13.4    Binding Effect

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against or Equity Interest in the Debtor and its successors and assigns (including the Reorganized Debtor), whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

### 13.5    Terms of Injunctions or Stays

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Chapter 11 Case.

### 13.6    Injunction Against Interference with the Plan

Upon the occurrence of the Effective Date, all Holders of Claims and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 13.7    Preservation of Claim Objections and Estate Litigation

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor and the Reorganized Debtor shall retains the exclusive right to object to all Claims and interests asserted against it and commence and/or continue all of the Recovery Actions, including without limitation: (1) Recovery Actions, (2) all claims and Causes of Action disclosed in the Schedules and/or Disclosure Statement which are incorporated herein by reference; and (3) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or re-vest in the Reorganized Debtor except as otherwise provided in this Plan.

Unless a claim or Cause of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor and the Reorganized expressly reserves such claim or Cause of Action for later adjudication by the Debtor or the Reorganized Debtor (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such Claims or Causes of Action that have been released in the Plan or any other Final Order.

After the Effective Date, the Reorganized Debtor may pursue, abandon, or release any or all Recovery Actions as it deems appropriate, without the need to obtain approval or any or other further relief

from the Bankruptcy Court.  The Debtor and the Reorganized Debtor, in its sole discretion, may offset any such claim held against a person or Entity, against any payment due such person or Entity under the Plan.

### ARTICLE XIV
### INJUNCTIONS AND INDEMNIFICATION

**14.1     Exculpation**

The Debtor, its members, partners, subsidiaries, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers, property managers and other professionals retained by such persons) shall have no liability to any person for any act or omission in connection with, or arising out of, (i) the Disclosure Statement, (ii) the Plan, (iii) the solicitation of votes for, and pursuit of confirmation of, the Plan, (iv) the formulation, preparation, implementation or consummation of the Plan, (v) the administration of the Plan or the property to be distributed under the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or (vi) any other act taken or omitted to be taken in connection with the Chapter 11 Case, except for willful misconduct or gross negligence as determined by a Final Order after exhaustion of all rights of appeal, reconsideration or rehearing and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and the Chapter 11 Case.

**14.2     Discharge**

Except as provided in Section 1141 of the Bankruptcy Code, the Plan, or the Confirmation Order, Confirmation of the Plan will discharge the Debtor from any debt that arose before the date of such Confirmation, and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not – (1) a proof of the Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (2) such Claim is allowed under Section 502 of the Bankruptcy Code; or (3) the Holder of such Claim has accepted the Plan.

Except as otherwise provided in the Plan or Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against, and all debts and liabilities of, the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a discharged Claim.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a Claim or other debt or liability that is discharged, pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim:  (i) commencing or continuing, in any manner, any action or other proceeding against the Debtor or its respective successors or its respective properties (including the Reorganized Debtor); (ii) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree or order against the Debtor or its respective successors or its respective properties (including the Reorganized Debtor); (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its respective successors or its respective properties (including the Reorganized Debtor); or (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Any person injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

**14.3    Injunction**

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged, pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Reorganized Debtor or its successors, affiliates, agents, or assigns, or its properties, or against any co-obligor, related to such discharged Claims or property owned by any such co-obligor related to or on account of any such discharged Claims, debts or liabilities: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, the Reorganized Debtor, or the Estate; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

**14.4    Forbearance Against Co-Obligors**

Holders of Claims who are Unimpaired under the Plan shall forebear from pursuing any and all co-obligors of such Claims and/or Collateral pledged by any co-obligor to secure such Claims unless and until the Reorganized Debtor defaults in its obligations under the Plan and the Bankruptcy Court enters an Order confirming such default.

**14.5    Indemnification Obligations and Claims of Co-Obligors**

Notwithstanding anything to the contrary in the Plan, the obligations of the Debtor:  (i) to indemnify individuals who have served as its respective directors, officers, agents, employees, representatives and others, pursuant to its respective certificates or articles of incorporation, by-laws and applicable statutes in respect of all present and future actions, suits and proceedings against any such officers, directors, agents, employees, representatives and others, based upon any act or omission related to such service with or for or on behalf of the Debtor; and (ii) to co-obligors of Claims to the extent the Reorganized Debtor fails to pay the Claim to the underlying Entity pursuant to the Plan, shall not be discharged or impaired by the confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Reorganized Debtor regardless of such confirmation, consummation and reorganization, as may be governed by applicable law.

**ARTICLE XV**
**RETENTION OF JURISDICTION**

**15.1    Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Chapter 11 Case, the Plan, the Confirmation Order, the Creditors' Royalties Escrow, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b)     To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c)     To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d)     To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f)     To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g)     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, including but not limited to any motions filed pursuant to section 363 of the Bankruptcy Code;

(h)     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i)     To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k)     To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l)     To enforce remedies upon any default under the Plan;

(m)     To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case have been closed);

(n)     To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith;

(o)     To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p)        To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q)        To determine such other matters as may be provided for in the Confirmation Order or other Court Order or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r)        To hear any other matter if the Bankruptcy Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s)        To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan;

(t)        To hear and determine issues relating to the quarterly liquidation and Distributions of the Creditors' Royalties Escrow; and

(u)        To enter a final decree closing the Chapter 11 Case.

# ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**16.1    Modification of the Plan**

### 16.1.1   Modification Before the Effective Date

The Debtor may alter, amend, or modify the Plan or any provision or potion thereof under section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; *provided, however,* that such modification does not (i) waive or modify any of the conditions precedent to the Effective Date set forth in section 12.2, and (ii) materially modify the Plan. The Debtor shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Court Order. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such Holder.

### 16.1.2   Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor or the Reorganized Debtor may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of Holders of Claims under the Plan; *provided, however*, that, to the extent required by the Bankruptcy Rules or a Court Order, prior notice of any such proceedings shall be served in accordance therewith. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 16.1.3 Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Reorganized Debtor may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders

## 16.2   Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

## 16.3   Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> **To Counsel for the Trustee**:
> Leech Tishman, Fuscaldo & Lampl, LLC
> Crystal H. Thornton-Ilar, Esq.
> Michael P. Kruzewski, Esq.
> 535 Penn Plaza Place
> 28th Floor
> Pittsburgh, PA 15219
> Phone No. (412) 261-1600
> Fax No. (412) 227-5551
>
> **To Counsel for Game Creek Holdings, LLC:**
> Bernstein-Burkley, P.C.
> Kirk B. Burkley, Esquire
> 601 Grant Street
> 9th Floor
> Pittsburgh, PA 15219
> Phone No: (412) 456-8108
> Fax No. (412) 456-8135

## 16.4   Further Documents and Actions

The Debtor shall execute and is authorized to file with the Bankruptcy Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan.  The Debtor and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

**16.5    Relationship Between the Plan and Disclosure Statement**

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

**16.6    Reservation of Rights**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case, including the Debtor, are and will be reserved in full.  Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

**16.7    Post-Confirmation Date Fees and Expenses**

After the Confirmation Date, the Debtor and the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor and the Reorganized Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Debtor or the Reorganized Debtor.  If the Debtor disputes the reasonableness of any such invoice, it shall timely pay the undisputed portion of such invoice and submit the dispute regarding the balance of such invoice to the Bankruptcy Court for a determination of its reasonableness.

**16.8    Binding Effect**

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, the Reorganized Debtor, all Holders of Claims or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or Entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that, after the occurrence of the Effective Date, the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Dated:  November 21, 2024                    **BERNSTEIN-BURKLEY, P.C.**

By: */s/ Kirk B. Burkley*
Kirk B. Burkley, Esq.
PA I.D. No. 89511
kburkley@bernsteinlaw.com
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Phone No: (412) 456-8100
Fax No: (412) 456-8135
*Attorney for Game Creek Holdings, LLC*